Thank you very much. Thank you very much. Okay, we have another argument council, so if you could just just clear the space. Thank you. Mr. Freyfeld, you've reserved two minutes. Yes, you're on. You may proceed. Please the court. My name is Andrew Freyfeld. I represent appellate Tavon Whaley. My first contact with this case was after the appeal was filed, and the court assigned me as counsel. The issue presented is whether suppression was required when there was no evidence that the searching officers ever reviewed attachment B before executing the warrant. Well, that's not what the testimony was at the hearing, was it? That's my contention. There is no evidence that the officer reviewed attachment B before, that any officer ever reviewed attachment B before executing the warrant. Well, there's testimony that even assuming she didn't hold up attachment B and show it to the other officers, she had prepared, or is it a she, Agent Phelan had prepared the warrant, had the attachments, and then briefed them. And so why isn't that good enough? Yeah, I think that Agent Phelan was a male. Okay. Judge, there's no testimony that he prepared the attachments to the warrant. The attachments to the warrant presumably were prepared by the U.S. attorney. In fact, I don't think he ever testified that I saw the attachments to the warrant. Didn't he prepare the affidavit in support of the attachments? Is that the point? Yes. Well, I don't know that he prepared the affidavit, but he signed it. There's no question about it. But that doesn't mean that he had to read the attachments. The affidavit itself. The attachment is referenced in the affidavit, isn't it? It says C attachment. I don't know. I'm not aware of that. I'm not aware of that. I have it at 853, and it certainly refers to the attachments. 853, your Honor? Yeah, 853 paragraph 7. At the time that we were executing the search warrant, I was familiar with the attachment B to the search warrant because it was included in my application and on the copy of the search warrant that I received. Okay. His testimony was otherwise. His testimony was different than that. I don't dispute that he received the attachment after the magistrate signed it and it was returned to him. He simply took the warrant along with the attachments and he put it in his file. There's no evidence that he reviewed the attachments before it was submitted to the magistrate. And, by the way, he doesn't have to review the attachments before he submits it to the magistrate. All he needs to do is review his own affidavit. He's not attesting when he submits to the magistrate what it is that they're looking for. He's simply attesting that there's probable cause to conduct the search. So there is no evidence that he reviewed the attachments prior to submitting the- He testified that attachment B is typically the items that we would be allowed to seize under the search warrant. I mean, you could-  Look at that as well, but he certainly is indicating familiarity with what's in attachment B. I think that what he's admitting is I'm familiar with attachment Bs in narcotics cases. I've done a hundred of these. This is his testimony. I've executed a hundred search warrants at residences. I know what we're looking for. I know what attachment B concerns. Attachment B, he implies, is no different in this case than it is in every other case. And that's the source of his familiarity with attachment B. In fact, Your Honor, the testimony went like this. And this is at A-103. Question. How is it that you're familiar with attachment B to the search warrant? His answer is not that he read it. His answer is it's a standard attachment B that agents also file when they're seeking a search warrant. In the follow-up, the prosecutor doesn't say to him, did you actually read attachment B? Doesn't that suggest that he knew what was in attachment B? Even assuming he didn't read it that time, he said this is a standard list. And the implication is he was familiar with what was on the list. So then they don't have to read it. That's essentially, I think that follows. I'm a narcotics officer. I know what we have to look for when we're executing a warrant. Why do I have to bother to waste my time reading attachment B? They're all the same. I mean, that, I submit, is the sum and substance of his testimony. And even the prosecutor followed up and said, why isn't there a question? Why didn't the prosecutor ever ask, did you read attachment B? They never asked that question during the course of the hearing. And that, I submit, is the bottom line issue. And I argue. Did counsel for the plaintiff ask that question? Could they have asked that question? Did you read attachment B? Yeah. Oh, could defense counsel? Yeah. I suppose he could have. Yeah. But he didn't. No, he didn't. Nor did the prosecutor. Okay. So it's, I submit. So didn't the trial judge make a finding that the officers understood what was to be searched? That's a factual finding. Based on what? Based on the testimony. Even assuming there's, you know, that you could quibble about the testimony, the trial judge, after considering all the evidence, was persuaded. The answer to the question is he was persuaded based on one portion of the testimony, that there was a meeting prior to the execution of the search warrant. That was it. That's the only fact that his honor looked to when he made the finding. He did not look to this vague testimony about all attachment Bs are the same, so I know what I'm looking for. Yes, it's true. Defense counsel could have asked the same question. My argument is that it was incumbent upon the government to move forward in the first instance to show that the guy knew what he was looking for. But so the judge hears that there's been a meeting prior to the search of the agent and the folks conducting the search, and from that he draws the inference that they had a discussion about what they are searching for. Why is that an unreasonable inference? Okay. You know, I'm arguing that there's no evidence to support that they discussed what they were searching for at the meeting, number one. Number two, there's no evidence that the only person who conceivably could have read attachment B, who was Phelan, was even at the meeting. He never said that he was at the meeting. He said a meeting was conducted. There was no evidence on what was discussed at the meeting, and that's my argument. In addition, I assert that there is affirmative evidence that attachment B was never read, and it's as follows. They filled out a DEA-6, which is in the record. He states Phelan fills out the DEA-6 to describe what happened. He said we seized vehicles pursuant to the execution of the search warrant. It turns out vehicles were not authorized to be seized under the terms of the search warrant. So here he is claiming that it appears. I read this. Here he is claiming it is DEA-6. I read the search warrant, and that's why we came to seize these vehicles. It's not true. He wasn't permitted. The warrant itself did not authorize it. No dispute that they could seize the vehicles, right? You're not even disputing that. No, I'm not disputing that. No, no, and the vehicles weren't- The fact that they took the vehicles and the statement you just recited is evidence that the agents hadn't read the attachment. Yes, his affirmative statement that we seized the vehicles pursuant to the search warrant supports our claim that the government never asked them whether he had read attachment B because, in fact, he hadn't read attachment B. Yes, that's the argument. Yes, we weren't seeking suppression of the vehicles at all, Your Honor. Is there anything else that was seized that was outside of the scope of attachment B? No. No, there wasn't. But they didn't seize refrigerators, and they didn't seize flat-screen TVs. This was a drug case, and they knew it. They were just looking for drugs, cash, and electronics, and they all knew that. They were all narcotics officers. They didn't need to know what was particularized in the warrant. There was no prejudice? Are you asserting there was any prejudice as a result of this? I'm not asserting that there was prejudice. I am asserting that it was deliberate, that the officer didn't include attachment B. And why was it deliberate? Well, I mean, it was just, pardon me, intentional. Does that matter? Why didn't he print it? Why didn't he print it and bring it to the search as is required? It was intentional. When he was asked, why didn't you bring it, he said, no real reason. That was his answer, no real reason. I submit that if you suppress, they'll know next time they've got to bring the entire warrant and comply with it. Thank you. All right, thank you. You've reserved two minutes for rebuttal. We'll now hear from Nicholas, Mr. Commandeur. Am I pronouncing that right? Yes, Your Honor. Thank you. May it please the Court, Nicholas Commandeur on behalf of the government. I'd like to start by addressing a couple of factual points that were raised by Appellant's argument just now. First of all, I believe the record is very clear, as Judge Chin pointed out, that Agent Phelan made clear below that he was familiar with attachment B, that attachment B was part of the application that he prepared and that he submitted to the court. That's spelled out very clearly in his declaration at A52. Agent Phelan also made clear that when he received the warrant back from the court, and the warrant clearly included both of the attachments, attachment A and attachment B, there's no argument to the contrary, that Agent Phelan compared the attachments to the application he submitted and confirmed that they were identical. It is true that Agent Phelan said he was particularly familiar with an attachment B, such as the exact one that was here, because he's a trained narcotics investigator, and those are typical of the types of things that we see in residential search warrants. Can I ask you, is that enough if, let's just assume for purposes of argument, that Agent Phelan didn't read this attachment B because he knows what's in it and that none of the agents discussed it, he just went in there and said, this is a typical narcotics case, you know what to do. Is that enough if it just happens to be true that this attachment B was like every other attachment B? That would be a tough case, Your Honor. I would start by analyzing it from the proposition that's been recognized by this court, that when there is a valid warrant, and again in this case there's no dispute that the warrant was sufficiently particular in describing the location to be searched and the items to be seized, and that it was supported by probable cause, there is a presumption that when there is a valid warrant that the search is reasonable. And so I think it's incumbent upon the party who is challenging that warrant and saying that while they concede that it's a valid warrant, it was somehow executed improperly to point to something. And so I think in your hypothesis... Isn't the presumption there because we would presume that the searchers all stuck to what was in the warrant and that they knew what was in the warrant? Yes, Your Honor. And again, in my practice and certainly in this case, that was true. The lead case agent in this case was familiar with the warrant. He prepared the application. That's why I think, Your Honor, in most cases, the agent who is preparing the application and submitting it is going to be familiar with the contents. And so provided that the application provides sufficient specificity to support the items that are to be seized, that will be sufficient, and that was certainly the case here. I know that in his brief, the appellant tried to suggest that Agent Phelan's testimony was somehow inconsistent with his knowledge and familiarity with the attachment. And counsel pointed to a transcript page at A106 where Agent Phelan was asked a different question. He was asked, did you prepare the warrant and the attachments? The warrant itself also had an attachment A and attachment B. And he indicated no, he didn't prepare the warrant. That was done by the U.S. Attorney's Office. But again, that is not inconsistent with his very clear testimony in the declaration that Judge Chin cited to, that he was familiar with the attachment B and it was part of his application and he prepared it. The second point that I would like to address, the factual issue that counsel raised, was that somehow the DEA 6 report and Agent Phelan's comments in that indicated that he was unaware of the limits of the search warrant because he indicated that he seized vehicles pursuant to the execution of the search warrant. Agent Phelan was crystal clear below, both in his declaration and in the evidentiary hearing, that the vehicles were seized pursuant to administrative authority. Again, as was reflected previously, there was no dispute that that was lawful. The defendant has not argued otherwise. Agent Phelan was not asked about this reference in his DEA 6 report where he's cataloging the evidence that was received. I would submit, Your Honor, that the statement he made there is accurate insofar as he's saying that it was seized pursuant to the execution of the search warrant. He's not saying it was seized pursuant to a search warrant. It was seized pursuant to the execution of the search warrant, and so far that was the event at which those vehicles were seized. They were sitting out in the parking lot. I'll address briefly, first of all, the constitutional question, and then I'll turn for a couple of minutes and address Rule 41. On the constitutional question, again, we're starting from a place where there's no argument that the warrant in this case, there's no dispute that the warrant was valid. There's also no dispute that during the execution of the warrant, officers only searched in areas that they were authorized to search, and they only removed items that they were authorized to remove. The only thing that the appellant has identified as a transgression by the executing agents is that they failed to leave a complete copy of the search warrant when they left the receipt of the items that they have taken. As we have argued, we believe that at most that is a Rule 41 violation. We believe the Supreme Court in Grubbs and also this court in Pagburn recognized that the issue of leaving a warrant is one of notice, and concerns about notice arise through Rule 41. They are not of constitutional dimension. With respect to the Rule 41 argument, as we've said, first of all, this argument was waived below in connection with the motion for reconsideration. The defendant made clear and emphasized that he was not presenting a Rule 41 argument to the district court below. While we believe, and so I think- You're saying he made that clear at the time of the initial motion? No, Your Honor. You're saying just in the motion for reconsideration, he didn't pursue the Rule 41 argument? He went further than that, Your Honor, because in the decision denying the motion, the original decision, the court analyzed it and addressed Rule 41, and whether this was a violation of Rule 41, and if so, what the appropriate remedy would be. And as we noted, that was an appropriate consideration, because it's true that the appellant below did reference Rule 41 in his original moving brief. However, when the defendant moved for reconsideration, he went out of his way to say, Your Honor, district court, you were wrong in ruling against us and analyzing this as a Rule 41 question, because we are not arguing a Rule 41. That is not the basis for our motion and went so far as to emphasize, italicize the word not, so that there would be no ambiguity as to what the position was. So we think that that argument is waived. Well, I mean, the waiver basically preserves his ability to challenge, you know, the following issues, and it just lists the court's two orders, and one of the orders related to the Rule 41, right? Well, Your Honor, I think that he is certainly entitled under the conditional plea agreement to argue about both errors that he believes were asserted in the original denial of the motion to suppress and how the court addressed the motion for reconsideration. I believe, however, that he is still bound by the litigating positions that he took in arguing towards those two orders, and one of the litigating positions that he took was that he was not presenting a Rule 41 argument. So when this court is evaluating— Well, he was not presenting a Rule 41 argument in the motion for reconsideration. Well, I read his argument on the motion for reconsideration to try to inform Judge McAvoy, listen, you've got it wrong in denying our motion because you're considering Rule 41, and that's not where we are fighting. Counsel, I know you're pointing—I'm looking at the GA Appendix 25, and I know you're pointing to the language that says it's a constitutional, not a rules violation on page 3, but if you look at page 5 on the first full paragraph, it says, because the failure of the descriptive documents to accompany the warrant was a constitutional violation and not merely a rule violation. So even with the language in the heading, perhaps that was a mistake because following that they say not merely a rule violation. Your Honor, I'm sorry. I missed the reference that Your Honor made. In the Appendix GA 27, which is page 5 of the defendant's brief on the motion for reconsideration, on page 3 the defendant makes the argument that you point us to, which is that it's a constitutional violation, not a rule violation. Two pages later it says that it's a constitutional violation, not merely a rule violation. Fair enough, Your Honor. But I read the point to be we are not asking this Court to consider it as a Rule 41 violation. We're asking to consider it as a constitutional violation. But it doesn't really matter either way is what you're really saying, right? Correct, Your Honor. Even if it is not waived, we believe that the Rule 41 violation, the remedy, is almost never going to be exclusion of evidence. This Court has made it clear both in Pagburn and Burke that unless there is a showing that either there was a deliberate disregard of the rule, and again that means not simply that agents acted in a deliberate way that happened to violate the rule, but instead that they deliberately tried to ignore the rule, or there is some evidence that the defendant has been prejudiced insofar as the search would not have been conducted in the same way that it was, there can be no suppression for a Rule 41 violation. I see that I'm out of time, so unless the Court has any further questions, we would rest on our papers. All right. Thank you very much. Thank you. We'll now hear from Mr. Freifeld for two minutes of rebuttal. My friend would have you believe that Phelan was sitting there drafting his own affidavit, and he did it all himself, and he himself somehow as well drafted the attachments. I think the Court knows well that it's the AUSA who drafts the affidavit. He gets the information from the agent, there's no question, and the agent signs to the truth of it, but it's the AUSA who prepares the affirmation, more importantly prepares the attachments. As I said before, the agent is not attesting to the content of the attachments. There's no reason for him to even look at the attachments at the time that he submits his affirmation and the time he signs it. Why do you say there's no reason for him to look at the attachments? He's talking about whether there's probable cause in his affirmation. He's not saying what we're looking for. But it's probable cause to search for certain things. It's not a probable cause to search for anything. Okay. I don't think that he needs to articulate. His affidavit doesn't articulate what it is that he's searching for. That's the judgment of the AUSA and of the Court, what they need to search for, what falls within. He's not an expert. He can't say what falls within the rubric of probable cause or not. That's left to, I submit, to the Court and to the AUSA. The chances that these agents are looking, reading the attachments to see that they comply constitutionally, I submit, is zero. It's true that the agent did write in his affirmation and he did testify that the vehicles were seized pursuant to the administrative authority. That's because the AUSA was cleaning it up. The AUSA saw that he wrote in the DEA 6 that he had seized the stuff pursuant to the execution of the search warrant. So properly, I'm not saying it was improper, the government cleaned it up and made sure that he would testify that he wasn't seizing it pursuant to the execution of the warrant as he'd written. Rather, he was seizing it pursuant to this administrative authority. If I could just touch briefly on two quick issues. The constitutional issue that's presented is just as Her Honor had said. It's whether or not the evidence should be suppressed if no one looked at attachment D. That's a constitutional issue that's clearly presented. So it's not just a Rule 41 issue, as my friend would have the Court believe, that's presented. As to waiver, the counsel below failed to include one word in that one sentence on G8-025. We're not relying solely on Rule 41. We're also relying on a constitutional issue. I submit if he had put in that one word solely as the next page bears out, he would have been arguing both the Rule 41 and the constitutional issue. And therefore, he did not waive the Rule 41 claim. Thank you. Okay, thank you both. We will reserve decision.